## SETH GROSVENOR v. The FLAX and HEMP MANUFACTURING COMPANY and others.

The selling of goods, or stock, or property of any kind, at a price beyond its value, as part of a loan, by way of cover or pretext for obtaining more than the legal rate of interest, will taint the whole transaction with usury, and destroy the validity of the instruments given for the loan.

Proof that part of the loan was advanced in goods or stock, will not throw on the opposite party the burthen of proving the value of such goods or stock. The person charging the usury must prove not only that the goods or stock constituted a part of the loan, but also that they were put off at a price beyond their value.

BILL, for the foreclosure of a mortgage given by the Flax and Hemp Manufacturing company to Edward Kellogg, to secure the payment of two thousand nine hundred and ninety-four dollars and six cents, assigned by Kellogg to the complainant. The bill sets forth two subsequent mortgages upon the same property, both dated the 24th of October, 1838, one of which was given to Jonathan Thorne, to secure the payment of ten thousand dollars, and the other to Sidney B. Whitlock, to secure the payment of five thousand dollars. The defendants, Thorne

and Whitlock, answered, setting up their mortgages as incumbrances upon the premises described in the bill of complaint. At April term, 1840, a final decree was taken, directing all the mortgages to be paid out of the mortgaged premises, in the order of their priority, and execution was thereupon issued.

On the 12th of June, 1840, on the petition of the receivers appointed by the chancellor, for the stockholders and creditors of the said the Flax and Hemp Manufacturing company, the decree was opened, proceedings on the execution stayed, and the receivers admitted to answer the complainant's bill. The receivers, by their answer, admit the complainant's mortgage, but insist that the mortgages of Thorne and Whitlock are usurious and void. The facts relied on as constituting the usury, appear in the opinion of the chancellor.

The cause came on for hearing upon the pleadings and proofs, at Newark, on the 21st of June, 1840.

*J. J. Chetwood,* for complainant.

*F. B. Chetwood* and *I. H. Williamson,* for the receivers.

*A. Whitehead* and *E. Vanarsdale,* for the defendants, Thorne and Whitlock.

Cases cited by the counsel of the receivers. *Douglass,* 736; 1 *Esp. Rep.* 38; 2 *Campbell,* 375; 1 *Paige,* 613; 12 *Wendell,* 41; 1 *Phillips' Ev.* 202; 1 *Stark. Ev.* 47; 18 *Wendell,* 353.

Cases cited by the counsel of Thorne and Whitlock. 1 *Paige,* 263, 268; 1 *Sch. and Lef.* 710, 718; 2 *Ball and Beatty,* 271; 4 *Peters,* 205; 2 *Campbell,* 553; *Angel and Ames on Corp.* 394–5; 1 *Fonb. Eq.* 22, 233; 5 *John. Chan. R.* 142; 1 *Term R.* 153; *Saxton,* 364.

THE CHANCELLOR. There are three mortgages involved in this cause, made by the Flax and Hemp Manufacturing compa-

ny; one bearing date the 27th of October, 1837, to Edward Kellogg, and by him assigned to the complainant, to secure the sum of two thousand nine hundred and ninety-four dollars and six cents; one bearing date the 24th of October, 1838, to Jonathan Thorne, (a defendant,) to secure the sum of ten thousand dollars; and one bearing date also on the said 24th of October, 1838, to Sidney B. Whitlock, (another defendant,) to secure the sum of five thousand dollars. The complainant's mortgage is undisputed both as to its validity and priority, and must of course be first paid, with costs, from the sale of the property. The Flax and Hemp Manufacturing company, became entangled and insolvent in their circumstances, and receivers were appointed to settle up their affairs in the manner prescribed by law, and those receivers, who are also made defendants in this cause, have filed an answer impeaching the two mortgages of Thorne and Whitlock, as usurious and void. The allegation is, that the two mortgages were made upon one contract, and that in truth they both belong to Thorne. That the company, being much in want of money, applied through a committee to Mr. Thorne, to make them a loan of fifteen thousand dollars, and which he agreed to do provided they would take five thousand dollars in the stock of their own company; that is to say, ten thousand dollars in money, and five thousand dollars in stock. The loan was accepted and made on these terms. The further and material allegation is, that this stock was thus forced by Mr. Thorne upon the company at a price beyond its true value, and made a cover for a usurious loan; and to carry out his plans, and for greater security, he divided the amount loaned into two sums, and took five thousand dollars in a separate bond and mortgage to Mr. Whitlock.

The amount of these mortgages is large, and they should not, therefore, be declared void upon slight ground; the evidence should be clear and decided. The statute against usury must receive the sanction of every court of the state, the same as any other law, although it may at times produce harsh results. My own opinion is that the statute is necessary, and prevents op-

pression. The law upon the case, as stated in the answer, is also well settled, and that is, that the selling of goods, or stock, or property of any kind, at a price beyond its value, as part of a loan, by way of cover or pretext for obtaining more than the legal rate of interest, will vitiate the whole transaction, and destroy the validity of the instruments given for the loan. The cases cited from *Douglass*, 736, and 1 *Esp. Rep.* 38, do but express the well settled doctrine on this subject. The whole question, therefore, turns upon the facts of the case. Do they sustain the allegations made against these mortgages? That one hundred and twenty-seven shares of stock was taken at five thousand dollars, as part of the loan, and that the two mortgages really relate to one transaction, is abundantly proved, and nothing can be plainer than that dividing this loan into two sets of securities, cannot alter the rights of the parties. It is to the contract we are to look, and if that embraced the entire loan covered by both mortgages, then both the mortgages are in the same position, and are either valid or invalid, as the proof may turn out. What, then, was the value of the stock at the time this loan was made; and was it worth in market the price at which the company took it from Thorne, or not? This is the great question in the cause. That a party producing a bond and mortgage made in due form of law, may rest his claim to a recovery upon them without proof of their consideration, is not denied, but a case is cited from 2 *Campbell*, 375, which maintains that after proof is made that a part of the consideration was in goods or stock, the *onus* of showing that the stock or goods were worth the price at which they are taken, is on the holder of the bond and mortgage. I cannot think that this is the true rule, but that the party alleging the usury must make the entire proof, not only that goods or stock constituted part of the loan, but their value. In the present case, however, I see no necessity for determining this point, since the receivers have taken the proof on their part, and it is by that proof the case must be settled. There are four witnesses only examined, and of these only three speak of the value of the stock at or about the time of the loan, and of these

two of them say they considered the stock at that time worth par, and one of them places its value only at twenty or twenty-five dollars a share. Mr. Houghton, the first witness examined, says, he was a director of the company from 1835 to 1838. At the time he left he thinks the company was well off as to property, but short as to money. This witness in March, 1838, transferred these one hundred and twenty-seven shares to Mr. Thorne for three thousand five hundred dollars, not however as an absolute sale, but reserving to himself the right of redeeming them by paying that amount, with interest, at any time within a year. Thorne had also the right to sell the stock upon giving the witness fifteen days' notice, for any sum not less than the three thousand five hundred dollars, with interest. Thorne wrote to witness on the 5th of July, 1838, that he was offered three thousand five hundred dollars, with interest from the 28th March, for the stock. The witness says, he wrote Mr. Thorne that the stock was worth more than he was offered, he thinks he wrote him it was worth par, for such was then his opinion. This witness, then, clearly declared his belief that the stock was worth par at that time. The fact that he transferred in March preceding, these same shares to Mr. Thorne for three thousand five hundred dollars, does not militate against this view when the nature of the agreement is looked into. It was not an absolute sale, but a bargain made between them, as he says, without much reference to the value of the stock, by which he could possess himself of the notes of one Rich, and offset them to his own advantage, in a sum exceeding five thousand dollars. It is quite manifest that three thousand five hundred dollars was not fixed upon at the time as the settled value of the stock. The witness at that time insisted it was worth a great deal more, and declares he would not have taken that sum for it had he been able to hold it. Mr. Dean, another witness, who was a stockholder in the company, and who sold his stock in 1839 for twenty-five dollars a share, says he would not have sold this same stock in the summer and fall of 1838 for less than par. This loan was made in October, 1838, the very time here spoken of.

Mr. Groosenbeck, on the contrary, gives it as his opinion that in the fall of 1838 this stock was not worth more than from twenty to twenty-five dollars a share, but he has no knowledge of any being sold or offered at that price. Here, then, are two witnesses declaring the stock, in the summer and fall of 1838, worth par, and one witness, that it was worth only twenty or twenty-five dollars. These witnesses, too, it must be remembered, were stockholders, and one a director of the company. They had the opportunity of knowing, and the motive to inquire into the value of the stock. The statement made by the officers of the company, showed this result, and that its condition was improving. Under these circumstances, can I say from the evidence that the stock was not worth in the market its par value? The weight of evidence is clearly on that side. But this stock was not taken by the company at its par value. The par value was fifty dollars a share, and the company took it at only thirty-nine dollars and forty cents a share.

The worst feature is that of selling the company its own stock, and yet it is evident this stock had been received in the course of business a short time before by Thorne, and he might very well desire, even at a fair price, to get rid of it, and if the price fixed upon was fair, he had a right to get clear of it in the way he did. These witnesses, it must be remembered, are called to destroy the validity of these bonds and mortgages by the receivers, they are not the witnesses of Thorne and Whitlock, and yet they are very far from showing that this stock was put off at any undue price. The feelings and interest of the witnesses are all against Thorne and Whitlock.

My opinion, therefore, is, that the evidence not only fails to make out a case of usury in these bonds and mortgages, but that the reverse is shown. They must, therefore, be held as valid and subsisting liens on the property. This view will dispense with the necessity of examining several questions raised on the argument by the defendants, Thorne and Whitlock, both as to the manner in which the defence is raised, the competency of the witnesses, and the character of the evidence; for, allowing the

receivers to be right in these respects, they have failed on the merits of the case. Notwithstanding this result, I think it proper to say here, that the receivers, under the circumstances, were in my opinion in the right discharge of their duty to raise this question for the consideration of the court.

There must be the usual reference to a master to ascertain the amount due on the bonds and mortgages, and their priority.

Order accordingly.